■ DECISION SYSTEMS, INC., Appellant, v CITY OF NEW YORK, Respondent.—Order entered November 25, 1975, in the Supreme Court, New York County, insofar as it granted defendant's cross motion to dismiss plaintiff's claim set forth in its second cause of action to the extent that such claim exceeded $400., unanimously reversed on the law, the cross motion denied, and the second cause of action is fully reinstated as pleaded and the third and fifth affirmative defenses are stricken with $60 costs and disbursements to plaintiff-appellant. The second cause of action seeks over $165,000 for extra work, labor, services and materials, allegedly rendered in connection

with a contract to develop, implement and maintain an electronic data payroll system in the Office of the Comptroller of the City of New York. The contract is dated March 25, 1970, and the agreed price for the work specified in the contract was $91,600. However, under paragraph 10 of the contract, entitled "Changes and Extra Work", the Comptroller was given the power at any time by written order to make any change in the work within the general scope of the contract. Said paragraph also provided: "D. If any change under this clause causes an increase or decrease in the Vendor's cost of, or the time required for, the performance of any part of the work under this contract, whether or not changed by any order, an equitable adjustment shall be made and the contract modified in writing accordingly * * * F. No claim by the vendor for an equitable adjustment hereunder shall be allowed if asserted after final payment under this contract." Thus, it may fairly be concluded that, although there was a fixed price for the performance of the work scheduled, the parties contemplated the necessity for extras and intended to provide therefor. There is no dispute that plaintiff, the vendor, asserted its claim prior to any final payment under the contract. Defendant, the City of New York, rests its defense upon relevant sections of the New York City Charter and certain executive action taken pursuant to the powers conferred thereby. Section 1111 of the charter provides in pertinent part that "[n]o agency shall incur a liability or an expense for any purpose in excess of the amount *appropriated or otherwise authorized* therefor; and no charge, claim or liability shall exist or arise against the city * * * for any sum in excess of the *amount appropriated* or *otherwise authorized* for the particular purpose." (Emphasis added.) Under subdivision c of section 123 of the charter, the Mayor is given the discretionary power to issue directives "imposing limitations on the transfer or expenditure of funds appropriated in the budget, which except as otherwise provided by law shall be binding on all agencies." The office of the Comptroller is an agency within the contemplation of the charter. Under Executive Order No. 107 (§ 7, subd [m], par [3]), dated July 14, 1969, contracts for professional services were required to be submitted to the Mayor for his approval. It is noted that the Mayor approved this contract which included the provision for extra work. The defendant urges, *inter alia,* that the Mayor limited the amount payable on the contract to $92,000 and that any claim in excess of such amount is barred by section 1111 of the charter. Accordingly, the city argues, the Comptroller was without authority to commit more than $92,000 to the contract. In an effort to resolve their differences, the parties met and agreed upon a figure of $70,000, which amount was embodied in a supplemental contract which was submitted to the board of estimate for approval (this was necessary since such contract was not let for public bidding). In an accompanying letter, dated January 6, 1971, and signed by the First Deputy Comptroller, it was stated, "Funds for the performance of this work are available under Capital Project PU-16". Although the board's vote was 14 to 8 in favor of the contract, the number fell short of the two-thirds majority required. In the applicable annual budget, the unit of appropriation in the Comptroller's office for other than personal services was almost one million dollars. The line item for contractual office services, which included plaintiff's contract, was $349,135. There is some question as to the uncommitted and unexpended amount which existed at the time of the subject contract and claims thereunder. Moreover, there is no affirmative showing that the amount sought by plaintiff is actually in excess of the appropriation applicable to this contract. Section 1111 of the charter makes the limit of the liability any amount in excess of that "appropriated or otherwise autho-

rized." Thus, there may well be a question as to whether the Mayor can properly impose a limit below that appropriated or otherwise authorized, since the reference in the section to such sums as are "appropriated or otherwise authorized" refers to sums made available for payment of designated obligations. The third affirmative defense alleges that no amount at any time was appropriated or otherwise authorized by the city to pay for additional work. This assertion is negated by the January 6, 1971 letter of the First Deputy Comptroller, and is also apparently contradicted by the amounts of the unit appropriation and line item earlier referred to. The fifth affirmative defense asserts that no moneys in excess of $91,600 were appropriated for this contract; however, the city urges affirmance of the order below which included an allowance of $400 on the second cause, thus conceding that at least $92,000 was appropriated. Finally, this determination is not intended in any way to relieve plaintiff from its obligation of establishing the validity and correctness of each item of its claim, and any recovery should be limited to the fair and reasonable value of the extras. Concur—Stevens, P. J., Markewich, Kupferman, Murphy and Silverman, JJ.